UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTIAN URENA,                                          :
                                                               11 Civ. 1595 (PAC)(DF)
                           Petitioner,         :
                                                               **REPORT AND**
             -against-                                      :    **RECOMMENDATION**

WILLIAM A. LEE, Superintendent,                  :

                          Respondent.         :
------------------------------------------------------------X

**TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:**

## INTRODUCTION

       *Pro se* petitioner Christian Urena ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his April 26, 2001 conviction and sentence in the New York State Supreme Court, Bronx County. Upon a jury verdict, Petitioner was found guilty of Murder in the Second Degree, in violation of N.Y. Penal Law § 125.25[1]; Attempted Murder in the Second Degree, in violation of N.Y. Penal Law §§ 110, 125.25[1]; and Assault in the First Degree, in violation of N.Y. Penal Law § 120.10[1]. (*See* Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody, dated Feb. 28, 2011 ("Petition" or "Pet.") (Dkt. 1), at ¶ 5.) He was sentenced to a prison term of 35-and-a-half years to life (*id.,* at ¶ 4), and is presently incarcerated at the Green Haven Correctional Facility, in Stormville, New York.

       Currently pending before the Court is a motion by respondent William A. Lee ("Respondent"), Superintendent of Green Haven, to dismiss the Petition as untimely under the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1)(A). As Petitioner filed his habeas Petition almost three years after the expiration of AEDPA's one-year limitations period, and as he has not

demonstrated that he is entitled to statutory or equitable tolling of the statute of limitations, I recommend that Respondent's motion to dismiss the Petition be granted.

## BACKGROUND[1]

### A.   Petitioner's Direct Appeal of His State Conviction

On or about July 6, 2006, Petitioner, through counsel, appealed his conviction to the Appellate Division, First Department.  (*See* Declaration of Nancy D. Killian, Esq., in Support of Motion To Dismiss, dated May 9, 2011 ("Killian Decl") (annexed to Notice of Motion To Dismiss Pursuant to Fed. R. Civ. P. Rule 12(b)(6) and 28 U.S.C. § 2244(D)(1) ("Notice of Motion") (Dkt. 10)), at Ex. 1.)[2]  On December 21, 2006, the Appellate Division affirmed Petitioner's conviction.  *See People v. Urena*, 35 A.D.3d 296 (1st Dep't 2006); *see also* Killian Decl., Ex. 3.  Petitioner then sought further review from the New York Court of Appeals, but his application for leave to appeal was denied on February 20, 2007.  *See People v. Urena,* 8 N.Y.3d 885 (2007); *see also* Killian Decl., Ex. 4.  Petitioner did not petition for a writ of certiorari from the United States Supreme Court (Pet., at ¶ 10(g)), nor did he file any collateral, post-judgment motions in the trial court, to seek relief from his conviction or sentence (*id.,* at ¶ 11).

### B.   Periods During Which Petitioner Was in Federal Custody

On January 26, 2006, after his state conviction, but before his direct appeal was perfected and decided, Petitioner – who was also indicted by a federal grand jury, in the Southern District of New York, for a number of crimes – was temporarily transferred to federal custody.  (*See*

---

[1] For purposes of Respondent's motion, only relevant portions of the procedural history of this action are set forth herein.

[2] The record before this Court provides no explanation for the delay between Petitioner's conviction and sentencing in 2001, and the perfecting of his appeal in 2006.

Petitioner's memorandum (entitled "Petition," but herein referred to as "Pet. Mem."), attached to his form habeas Petition, at 2.)  On October 29, 2009, following a plea, Petitioner was sentenced to a federal prison term of 279 months, which, he asserts, was to run concurrently with his state sentence.  (*Id.*)  On December 21, 2009, Petitioner was transferred back to Green Haven. (*Id.*)

Petitioner apparently maintains that, for the nearly four years that he was in federal custody (January 26, 2006 to December 21, 2009), he received no information regarding the progress of his state appeal.  (*See* Pet. Mem., at 2.)  According to Petitioner, all of his property, including legal papers, were taken from him at the time he left state custody and were "stored away at Green Haven." (Pet. Mem., at 2.)  In addition, Petitioner alleges that, to the extent any legal mail regarding his state case was sent to him at Green Haven, that mail was not forwarded to him.  (*See id*.)  To demonstrate that his mail was not being forwarded, Petitioner submits an undated letter addressed to the Clerk of this Court, from Robert E. Ercole, a prior Superintendent of Green Haven, stating as follows, in relevant part:

> Legal mail for the above named inmate [Petitioner] was recently received from your office.  Please be advised that this inmate is temporarily absent from Green Haven Correctional Facility, and may not return in the immediate future.
>
> To avoid the confusion and delay that can accompany repeated attempts to forward this mail, it will be held at this facility until the inmate returns.

(Pet. Mem. (attached letter).)  Petitioner says nothing, however, about whether he made any attempts, while in federal custody, to inquire about the status of his state case.

In fact, the only document in the record that shows any inquiry by Petitioner regarding his state appeal is a copy of a letter he wrote to the District Attorney on February 26, 2010, after he had been returned to Green Haven.  (Killian Decl., Ex. 5 (Letter to Robert T. Johnson, District

3

Attorney, from Petitioner, dated Feb. 26, 2010).)  In that letter, Petitioner asked to be sent "the outcome by the Appellate Division and the Court of Appeals."  (*Id.,* at 2.)  By letter dated March 5, 2010, the District Attorney replied to Petitioner's letter, enclosing copies of (1) the Appellate Division's decision affirming Petitioner's conviction; (2) Notice of Entry of the Appellate Division's Order; (3) an affidavit of service, showing that the Notice of Entry was served on Petitioner's appellate counsel on December 29, 2006; (4) the certificate denying Petitioner leave to appeal to the Court of Appeals; and (5) a letter to Petitioner's appellate counsel dated February 20, 2007, enclosing that certificate.  (*See* Motion to Dismiss, Ex. 6.)

Petitioner states that, after having been returned to state custody (and presumably after having been informed of the outcome of his state appeal), he was again transferred to federal custody on April 1, 2010, as part of an "ongoing [federal] investigation."  (Pet. Mem., at 2.)  He states that, this time, he remained in federal custody for about five months (until September 3, 2010), and that, during this second period of federal detention, he again had no access to the "legal materials" that had been in his possession at Green Haven.  (*See id.*)

### C.     Petitioner's Habeas Petition

Petitioner filed his Petition in this habeas proceeding on February 28, 2011.  (*See* Pet.)[3]  On May 9, 2011, Respondent moved to dismiss the Petition, arguing that it was not timely filed, under AEDPA.  (*See* Memorandum of Law, dated May 2001 ("Resp. Mem."), annexed to Notice of Motion (Dkt. 10).)  Petitioner responded to Respondent's motion with a reply submission

---

[3] Although the Court's docket reflects a filing date of March 7, 2011 (Dkt. 1), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the Court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  Thus, the Court will deem the Petition to have been filed on February 28, 2011, the date Petitioner signed it.  *See, e.g.*, *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000).

dated June 3, 2011.  (Letter to the Court, from Petitioner, dated June 3, 2011 ("Pet. Reply") (Dkt. 11).)  In his reply, Petitioner argues that "extraordinary relief" exists for tolling the statute of limitations in his case, as "occurrences . . . beyond [his] control" "unfortunately hindered [him] from pursuing [his] legal endeavors in this matter."  (*Id.,* at 1.)

## DISCUSSION

### I.   APPLICABLE LEGAL STANDARDS

#### A.   The AEDPA Statute of Limitations

Under AEDPA, a federal habeas petition must be filed within a one-year limitations period beginning on the latest of four dates, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A) (2000); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (citations omitted) (judgment becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] the time to seek direct review via certiorari").

The limitations period may alternatively begin to run on the following dates:  (1) where the petitioner was prevented from filing an application by unlawful state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

### B.     Tolling of the Statute of Limitations

The AEDPA statute of limitations may be tolled during the pendency of "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgment or claim."  28 U.S.C. § 2244(d)(2).  In addition, the statute may be "equitably" tolled, if "the petitioner shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, 130 S.Ct. 2549, 2560-62 (2010) (internal quotation marks omitted).  Such extraordinary circumstances may be found where, for example, a petitioner's attorney affirmatively and knowingly misled him into believing that his petition would be timely filed.  *Dillon v. Conway,* 642 F.3d 358, 363 (2d Cir. 2011); *see also Baldayuque v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003) (applying equitable tolling where petitioner had expressly instructed his counsel to file habeas petition, and counsel willfully ignored that instruction).

The burden is on the petitioner to demonstrate the existence of circumstances sufficiently "extraordinary" to warrant equitable tolling.  *See, e.g., Tran v. Alfonse Hotel Corp.*, 281 F.3d 23, 37 (2d Cir. 2002).  Moreover, even if the petitioner can show "extraordinary circumstances," he still cannot obtain the benefit of equitable tolling if, despite those circumstances, he could nonetheless have timely filed a petition through the exercise of "reasonable diligence."  *See Holland,* 130 S. Ct. at 2562, 2565; *see also Jenkins v. Greene*, 630 F.3d 298, 302-03 (2d Cir. 2010) ("A petitioner seeking equitable tolling must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'") (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

II.     **DEFENDANT'S MOTION**

In this case, Petitioner's conviction became final on May 21, 2007, *i.e.,* 90 days after the New York Court of Appeals denied leave to appeal.  Thus, Petitioner needed to file his Petition by one year from that date – in other words, by May 21, 2008 – for his filing to be timely.[4]  The Petition in this action was not filed, though, until February 28, 2011, rendering it subject to dismissal as untimely, absent tolling of the statute of limitations.  As Petitioner did not seek state post-conviction or other collateral review with respect to the judgment of conviction, there is no basis here for statutory tolling.  Accordingly, absent equitable tolling, the Petition should be dismissed.

In his submissions, Petitioner appears to contend that the statute of limitations should be found to have been equitably tolled during the entirety of both of the two periods that he was held in federal custody.  More specifically, Petitioner suggests that circumstances outside of his control – *i.e.,* his transfers, his inability to take his legal papers with him when he was transferred to federal custody, and the failure of the state facility to forward his mail – prevented him from learning the results of his direct appeal and thus "hindered" him from seeking habeas relief. (Pet. Reply; *see generally* Pet. Mem.)  If the statute were tolled for the entire periods that Petitioner references, then his Petition would be timely, as the statute of limitations would only

---

[4] The Court notes that no argument has been raised that any of the alternative one-year limitations periods set out in 28 U.S.C. § 2244(d)(1) should apply here, and it appears that none would.  Although Petitioner was transferred by the State to federal custody, and the state facility allegedly did not forward his mail, this can hardly be viewed as state action "in violation of the Constitution or laws of the United States," 28 U.S.C. § 2244(d)(1)(B), much less unlawful state action that constituted an impediment to Petitioner's filing a habeas petition (*see id.*), which Petitioner remained free to do.  Nor is there any issue here of a newly recognized constitutional right, 28 U.S.C. § 2244(d)(1)(C), nor of an inability by Petitioner to discover the factual predicate of his habeas claims, 28 U.S.C. § 2244(D)(1)(D).

have run for a total of about eight months (from December 21, 2009 to April 1, 2010, and then again from September 3, 2010 to February 28, 2011, the date of Petitioner's filing).

The flaw in Petitioner's argument, however, is that his transfers to federal custody, even if those transfers resulted in a loss of legal papers and mail, did not constitute "extraordinary circumstances," sufficient to warrant equitable tolling.  *See, e.g., Montalvo v. Strack*, No. 99 Civ. 5087 (JGK), 2000 WL 718439, at *2 (S.D.N.Y. June 5, 2000) (transfers between prison facilities did not merit equitable tolling of the one-year limitations period); *Rivera v. United States*, No. 10 Civ. 2593, 2011 WL 5966343, at *1 (2d Cir. Nov. 30, 2011) (delay in ability to contact attorney to request trial transcripts and other documents, and temporary withholding of documents by prison mail room did not constitute "extraordinary" circumstances); *Pitterson v. Lee,* No. 10 Civ. 7289 (CM) (FM), 2011 WL 3370393, at *6 (S.D.N.Y. July 29, 2011) (Report & Recommendation) (allegations that petitioner was denied access to the law library and that the library lacked adequate supplies did not rise to the level of "extraordinary" circumstances), *adopted by Pitterson v. Lee*, No. 10 Civ. 7289 (CM) (FM), 2011 WL 4595197 (S.D.N.Y. Sep. 26, 2011); *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005) ("In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances.").

Moreover, even if Petitioner lacked access to materials about his state case or information about the status of his state appeal, he has made no showing that he acted with "reasonable diligence" to obtain the needed materials or information during the initial period of his federal incarceration.  *See Holland*, 130 S. Ct. at 2565.  Petitioner has not shown, for example, that, during that period, he made any efforts to contact his state appellate lawyer to

8

inquire about the status of his case or to request copies of the decisions of the state appellate courts.  It is unlikely that Petitioner lacked knowledge as to how to contact his own state counsel, especially given that the record reflects that Petitioner's counsel perfected Petitioner's appeal during the period when Petitioner was in federal custody.  (*See* Killian Decl., Ex. 1.)  Yet even if Petitioner could not contact his attorney, or if the attorney refused to communicate with him, Petitioner has also failed to show that he took any steps, while federally incarcerated, to request information directly from the state courts or from the District Attorney's Office.  In fact, when Petitioner finally did request information from the District Attorney, fully three years after the denial of his appeal, the District Attorney apparently sent him, within one week, all of the information he requested, suggesting that Petitioner could have received the needed information far earlier, had he only inquired earlier.[5]

Further, although Petitioner complains that the state facility refused to forward his mail, he has made no showing that he notified his state counsel, the state court, or the District Attorney's Office of his change of address, so that legal mail could be sent to him directly, at the federal address.  It was unreasonable for Petitioner simply to have assumed that he need not take any action on his claims while in federal custody, merely because certain legal papers and mail were being held in the state facility.  While "reasonable diligence" does not require "maximum feasible diligence," *Holland*, 130 S. Ct. at 2526, the record here is devoid of evidence that Petitioner exercised *any* diligence to pursue his claims, *cf. id.,* at 2565 ("reasonable diligence" requirement satisfied where petitioner wrote numerous letters to his attorney and regularly

---

[5] Petitioner's eventual letter to the District Attorney also suggests that Petitioner believed, by that point in time, that his appeal had already been decided, as he asked not for the "status" of the appeal, but for information about the appeal's "outcome."  (Killian Decl., Ex. 5.)

contacted the state courts and bar association to remove his attorney from the case).  Petitioner cannot claim entitlement to equitable tolling, if, for an extended period of time, he essentially sat on his rights, making no efforts to pursue them.  *See Harper v. Ercole*, 648 F.3d 132, (2d Cir. 2011) (reiterating that party seeking equitable tolling must show diligent pursuit of his claim "*throughout the period he seeks to toll*") (internal quotation marks omitted) (emphasis in original); *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").  Here, Petitioner has not made any showing that, during the period of his federal incarceration, he made reasonable efforts to file his Petition within the statutory limitations period.

Given the lack of any evidence in the record that Petitioner was prevented from timely filing a habeas petition as a result of extraordinary circumstances, which reasonable efforts could not overcome, I recommend that his Petition be dismissed as untimely.  This Court notes, however, that Petitioner is proceeding in this matter *pro se,* and that he may not have fully understood the nature of the showing that he needed to make in order to justify equitable tolling of the statute of limitations.  If there are additional facts that would support a finding that Petitioner did act with "reasonable diligence" to pursue his claims, but that he was, nonetheless, unable to file a timely habeas petition, then Petitioner should present those facts fully in an objection to this Report and Recommendation, so that they may be considered by the Court.  As set out below, any such objection should be filed within 14 days.

**CONCLUSION**

For the foregoing reasons, I recommend that Respondent's motion to dismiss be granted, and that the Petition be dismissed in its entirety.  Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States Courthouse, 500 Pearl Street, Room 735, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Crotty.  FAILURE TO FILE OBJECTIONS WITHIN 14 DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).  If Petitioner does not have access to cases cited herein that are reported only on LEXIS or Westlaw, he may request copies from Respondents' counsel.  *See*

Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities cited therein that are unpublished or reported exclusively on computerized databases] as are cited in a decision of the Court and were not previously cited by any party.").

Dated: New York, New York
December 9, 2011

Respectfully submitted,

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Hon. Paul A. Crotty, U.S.D.J.

Mr. Christian Urena
DIN# 01-A-2728
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

Nancy Darragh Killian, Esq.
Bronx District Attorney
198 E. 161st St.
Bronx, NY 10451